08-0841-ag (L)
ABC, Inc., et al. v. Federal Communications Commission

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of January, two thousand eleven.

PRESENT: RICHARD C. WESLEY,
DEBRA A. LIVINGSTON,
Circuit Judges,
JANE A. RESTANI,*
Judge.

_____

Nos. 08-0841-ag (Lead)
08-1424-ag (Con)
08-1781-ag (Con)
08-1966-ag (Con)

ABC, INC., KTRK TELEVISION, INC., WLS TELEVISION, INC., CITADEL COMMUNICATIONS, LLC, WKRN, G.P., YOUNG BROADCASTING OF GREEN BAY, INC., WKOW TELEVISION, INC., WSIL-TV, INC., ABC TELEVISION AFFILIATES ASSOCIATION, CEDAR RAPIDS TELEVISION COMPANY, CENTEX TELEVISION LIMITED PARTNERSHIP, CHANNEL 12 OF BEAUMONT INCORPORATED, DUHAMEL BROADCASTING ENTERPRISES, GRAY TELEVISION LICENSE, INCORPORATED, KATC COMMUNICATIONS, INCORPORATED, KATV LLC, KDNL LICENSEE LLC, KETV HEARST-ARGYLE TELEVISION INCORPORATED, KLTV/KTRE LICENSE SUBSIDIARY LLC, KSTP-TV LLC, KSWO TELEVISION COMPANY INCORPORATED, KTBS INCORPORATED, KTUL LLC, KVUE TELEVISION INCORPORATED, MCGRAW-HILL BROADCASTING COMPANY INCORPORATED, MEDIA GENERAL COMMUNICATIONS HOLDINGS LLC, MISSION BROADCASTING INCORPORATED, MISSISSIPPI BROADCASTING PARTNERS, NEW YORK TIMES MANAGEMENT SERVICES, NEXSTAR

_____

* The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

BROADCASTING INCORPORATED, NPG OF TEXAS, L.P., OHIO/OKLAHOMA HEARST-ARGYLE TELEVISION INC., PIEDMONT TELEVISION OF HUNTSVILLE LICENSE LLC, PIEDMONT TELEVISION OF SPRINGFIELD LICENSE LLC, POLLACK/BELZ COMMUNICATION COMPANY, INC., POST-NEWSWEEK STATIONS SAN ANTONIO INC., SCRIPPS HOWARD BROADCASTING CO., SOUTHERN BROADCASTING INC., TENNESSEE BROADCASTING PARTNERS, TRIBUNE TELEVISION NEW ORLEANS INC., WAPT HEARST-ARGYLE TELEVISION INC., WDIO-TV LLC, WEAR LICENSEE LLC, WFAA-TV INC., WISN HEARST-ARGYLE TELEVISION INC.,

<u>Petitioners,</u>

v.

FEDERAL COMMUNICATIONS COMMISSION, UNITED STATES OF AMERICA,

<u>Respondents,</u>

FOX TELEVISION STATIONS, INC., NBC UNIVERSAL, INC., NBC TELEMUNDO LICENSE CO., CBS BROADCASTING INC.,

<u>Intervenors.</u>

---

FOR PETITIONERS:

SETH P. WAXMAN (Paul R.Q. Wolfson, Jack N. Goodman, Daniel S. Volchok, and Micah S. Myers, <u>on the brief</u>), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; John W. Zucker, Alan N. Braverman, and Susan L. Fox, ABC, Inc., New York, NY, <u>for Petitioners</u> ABC, Inc., KTRK Television, Inc., and WLS Television, Inc.

Wade H. Hargrove, Mark J. Prak, and David Kushner (Stephen Hartzell and Julia Ambrose, <u>on the brief</u>), Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, Raleigh, NC, <u>for Petitioners</u> Citadel Communications, LLC, WKRN, G.P., Young Broadcasting of Green Bay, Inc., WKOW Television Inc., WSIL-TV, Inc., ABC Television Affiliates Association, Cedar Rapids Television Company, Centex Television Limited Partnership, Channel 12 of Beaumont Incorporated, Duhamel Broadcasting Enterprises, Gray Television License, Incorporated, KATC Communications, Incorporated, KATV LLC, KDNL Licensee LLC, KETV Hearst-Argyle Television Incorporated, KLTV/KTRE License Subsidiary LLC, KSTP-TV LLC, KSWO Television Company Incorporated, KTBS Incorporated, KTUL LLC, KVUE Television Incorporated, McGraw-Hill Broadcasting Company Incorporated, Media General Communications Holdings LLC, Mission Broadcasting Incorporated, Mississippi Broadcasting Partners, New York Times Management Services, Nexstar

2

Broadcasting Incorporated, NPG of Texas, L.P., Ohio/Oklahoma Hearst-Argyle Television Inc., Piedmont Television of Huntsville License LLC, Piedmont Television of Springfield License LLC, Pollack/Belz Communication Company, Inc., Post-Newsweek Stations San Antonio Inc., Scripps Howard Broadcasting Co., Southern Broadcasting Inc., Tennessee Broadcasting Partners, Tribune Television New Orleans Inc., WAPT Hearst-Argyle Television Inc., WDIO-TV LLC, WEAR Licensee LLC, WFAA-TV Inc., and WISN Hearst-Argyle Television Inc.

Andrew J. Schwartzman and Parul P. Desai, Media Access Project, Washington, DC, for Amici Curiae Center for Creative Voices in Media and Future of Music Coalition, in support of Petitioners.

FOR RESPONDENTS: AUSTIN C. SCHLICK, General Counsel,[**] (Jacob M. Lewis, Acting Deputy General Counsel, Nadan M. Joshi, Counsel, on the brief), Federal Communications Commission, Washington, DC, for Respondent Federal Communications Commission.

Tony West, Assistant Attorney General,[***] (Thomas M. Bondy and Anne Murphy, on the brief), U.S. Department of Justice, Civil Division, Washington, DC, for Respondent United States of America.

Thomas B. North, Law Office of Thomas B. North, St. Ignace, MI, for Amicus Curiae Decency Enforcement Center for Television, in support of Respondents.

Robert W. Peters and Robin S. Whitehead, Morality in Media, Inc., New York, NY, for Amicus Curiae Morality in Media, Inc., in support of Respondents.

Christopher T. Craig and Robert R. Sparks, Jr., Sparks & Craig, LLP, McLean, VA, for Amicus Curiae Parents Television Council, in support of Respondents.

FOR INTERVENORS: Carter G. Phillips, R. Clark Wadlow, Mark Schneider, James P.

---

[**] Austin C. Schlick is substituted for Matthew B. Berry, who briefed and argued this case, as counsel for Respondent Federal Communications Commission.

[***] Tony West is substituted for Gregory G. Katsas, who briefed this case, as counsel for Respondent United States of America.

3

Young, Jennifer Tatel, David S. Petron, and Quin M. Sorenson, Sidley Austin LLP, Washington, DC; Ellen S. Agress, Maureen A. O'Connell, Fox Television Stations, Inc., New York, NY, <u>for Intervenor</u> Fox Television Stations, Inc.

Miguel A. Estrada, Gibson, Dunn & Crutcher LLP, Washington, DC; Susan E. Weiner, NBC Universal, Inc., New York, NY, <u>for Intervenors</u> NBC Universal, Inc. and NBC Telemundo License Co.

Robert Corn-Revere, Ronald G. London, Amber L. Husbands, and David M. Shapiro, Davis Wright Tremaine LLP, Washington, DC; Jonathan H. Anschell, CBS Broadcasting, Inc., Los Angeles, CA; Susanna M. Lowy, CBS Broadcasting, Inc., New York, NY, <u>for Intervenor</u> CBS Broadcasting Inc.

Petition for review of a forfeiture order of the Federal Communications Commission.

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review be **GRANTED** and the forfeiture order of the Federal Communications Commission ("FCC") be **VACATED**.

ABC, Inc. ("ABC") and the ABC Television Affiliates Association and ABC-affiliated television stations (collectively, "ABC Affiliates") petition for review of an order of the FCC determining that an episode of the ABC Television Network show <u>NYPD Blue</u> violated broadcast indecency standards because it depicted a woman's nude buttocks and imposing a forfeiture penalty against forty-four ABC-affiliated television stations. <u>See</u> <u>Complaints Against Various Television Licensees Concerning Their Feb. 25, 2003 Broad. of the Program "NYPD Blue"</u>, 23 FCC Rcd. 3147, 3147–48, 3171–75 (2008) ("<u>Forfeiture Order</u>"). Petitioners, supported by Intervenors Fox Television Stations, Inc. ("Fox"), NBC Universal, Inc. ("NBC"), NBC Telemundo License Co. ("Telemundo"), and CBS Broadcasting Inc., raise administrative

4

and constitutional challenges to the Forfeiture Order.[1]  Because Fox Television Stations, Inc. v. FCC, 613 F.3d 317, 335 (2d Cir. 2010) (rehearing en banc denied), held that the indecency policy under which the Forfeiture Order was issued is unconstitutionally vague, we grant the petition for review and vacate the Forfeiture Order.

## BACKGROUND

On February 25, 2003 at 9:00 p.m. in the Central and Mountain time zones, the ABC Television Network aired an episode of NYPD Blue that depicted an adult woman's nude buttocks for slightly less than seven seconds.[2]  Forfeiture Order, 23 FCC Rcd. at 3147–48 ¶¶ 2–3; NYPD Blue: Nude Awakening.  In the episode, Connie McDowell (played by Charlotte Ross), who has recently moved in with Andy Sipowicz, disrobes as she prepares to shower, and her nude buttocks are visible.  Complaints Against Various Television Licensees Concerning Their Feb. 25, 2003 Broad. of the Program "NYPD Blue", 23 FCC Rcd. 1596, 1598–99 ¶¶ 9–10 (2008) ("NAL") ; NYPD Blue: Nude Awakening.  As McDowell turns toward the shower, the side of her buttocks and the side of one of her breasts are visible.  NAL, 23 FCC Rcd. at 1599 ¶ 9.  While she faces the shower, the camera pans down, again revealing her nude buttocks.  Id. at 1599 ¶ 10.  Sipowicz's young son, Theo, enters the bathroom and sees McDowell naked from the front.  See NAL, 23 FCC Rcd. at 1599 ¶ 10; NYPD Blue: Nude Awakening.  Theo blocks the

---

[1] Amici curiae Center for Creative Voices in Media and Future of Music Coalition support Petitioners.  Amici curiae Decency Enforcement Center for Television, Morality in Media, Inc., and Parents Television Council support Respondents, the FCC and the United States.

[2] The episode began with a warning that "THIS POLICE DRAMA CONTAINS ADULT LANGUAGE AND PARTIAL NUDITY.  VIEWER DISCRETION IS ADVISED."  NYPD Blue: Nude Awakening (ABC television broadcast Feb. 25, 2003).

audience's view of McDowell's nudity.  Id.  Each character reacts with embarrassment, and Theo leaves the room and apologizes.  Id.  McDowell, covering her breasts and pubic area, responds, "It's okay.  No problem."  Id.  According to ABC and the ABC Affiliates, the scene was included to portray the awkwardness between a child and his parent's new romantic partner and their difficulties in adjusting to life together.

The FCC received indecency complaints regarding the episode, and in January 2008 the FCC issued a notice of apparent liability for forfeiture ("NAL") to ABC and the ABC Affiliates proposing the maximum forfeiture penalty of $27,500 against each station.  NAL, 23 FCC Rcd. at 1596, 1601 ¶ 18, 1602 ¶ 23.  In February 2008, the FCC issued the Forfeiture Order, determining that the depiction of the buttocks was indecent and imposing a penalty of $27,500 on each of forty-four ABC-affiliated stations.  See 23 FCC Rcd. at 3147 ¶¶ 1–2, 3171–75.  ABC and the ABC Affiliates petition this Court for review of the Forfeiture Order.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction pursuant to 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a).  Under the APA, we may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] contrary to constitutional right . . . ."  5 U.S.C. § 706(2)(A)–(B).  "We review an agency's disposition of constitutional issues de novo."  Cablevision Sys. Corp. v. FCC, 570 F.3d 83, 91 (2d Cir. 2009).

**DISCUSSION**

Under 18 U.S.C. § 1464, "[w]hoever utters any obscene, indecent, or profane language by means of radio communication" is subject to a criminal penalty.  18 U.S.C. § 1464.  A regulation

6

pursuant to that statute provides that "[n]o licensee of a radio or television broadcast station shall broadcast on any day between 6 a.m. and 10 p.m. any material which is indecent." 47 C.F.R. § 73.3999(b). The FCC may impose a forfeiture penalty when it determines that a licensee has violated 18 U.S.C. § 1464. 47 U.S.C. § 503(b)(1)(D). The FCC defines indecent material as "describ[ing] or depict[ing] sexual or excretory organs or activities" and "patently offensive as measured by contemporary community standards for the broadcast medium." Industry Guidance on the Comm'ns Case Law Interpreting 18 U.S.C. § 1464 and Enforcement Policies Regarding Broad. Indecency, 16 FCC Rcd. 7999, 8002 ¶¶ 7–8 (2001). In determining whether material is patently offensive, the FCC looks to three principal factors:

> (1) the explicitness or graphic nature of the description or depiction of sexual or excretory organs or activities; (2) whether the material dwells on or repeats at length descriptions of sexual or excretory organs or activities; (3) whether the material appears to pander or is used to titillate, or whether the material appears to have been presented for its shock value.

Id. at 8002 ¶ 10. The context in which the material appears "is critical." Id.

Speech "which is indecent but not obscene," however, "is protected by the First Amendment." Sable Commc'ns of Cal., Inc. v. FCC, 492 U.S. 115, 126 (1989). The First and Fifth Amendments protect speakers "from arbitrary and discriminatory enforcement of vague standards" in laws and regulations. Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 588 (1998). Standards are unconstitutionally vague if they do not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . ." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "The First Amendment places a special burden on the government to ensure that restrictions on speech are not impermissibly vague." Fox, 613 F.3d at 327.

7

In Fox, a panel of this Court struck down the FCC's indecency policy, holding that it violates the First Amendment because it is unconstitutionally vague. Id. at 319, 330. The FCC and the United States concede that Fox "invalidated the [FCC]'s indecency policy in its entirety." Supplemental Br. for FCC and United States 3. Although they contend that the facts of this case are different from those of Fox, the FCC and the United States correctly recognize that "Fox does not turn on [factual] distinctions."[3] Id.

Indeed, there is no significant distinction between this case and Fox. In Fox, the FCC levied fines for fleeting, unscripted utterances of "fuck" and "shit" during live broadcasts. Id. at 322. Although this case involves scripted nudity, the case turns on an application of the same context-based indecency test that Fox found "impermissibly vague." Id. at 327. According to the FCC, "nudity itself is not per se indecent." WPBN/WTOM License Subsidiary, Inc., Memorandum Opinion & Order, 15 FCC Rcd. 1838, 1841 ¶ 11 (2000). The FCC, therefore, decides in which contexts nudity is permissible and in which contexts it is not pursuant to an indecency policy that a panel of this Court has determined is unconstitutionally vague. Fox, 613 F.3d at 332.

Fox's determination that the FCC's indecency policy is unconstitutionally vague binds this panel. See United States v. Jass, 569 F.3d 47, 58 (2d Cir. 2009). Accordingly, we need not

_____

[3] Only amicus curiae Parents Television Council argues that this case is distinguishable from Fox. The Parents Television Council alleges that Fox's holding "is restricted to FCC's fleeting expletive policy as it relates to live, unscripted broadcasts." Supplemental Br. for Parents Television Council at 4. Although certainly the facts of Fox relate to live, unscripted broadcasts, Fox clearly sweeps more broadly, holding that the "current policy fails constitutional scrutiny." Fox, 613 F.3d at 335.

reach the administrative law or other constitutional challenges Petitioners raised.[4]

**CONCLUSION**

For the foregoing reasons, the petition for review is **GRANTED** and the forfeiture order

of the FCC is hereby **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court

---

[4] Because the constitutional issue is decided, the "fundamental and longstanding principle of judicial restraint" that "requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them," Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445–46 (1988), is not implicated.